HALLBROOKS *v.* ROSSER.

Opinion delivered May 3, 1920.

1. APPEAL AND ERROR—VERDICT ON CONFLICTING EVIDENCE.—A verdict of a jury is conclusive of issues involved upon which there was a conflict of testimony.

2. LANDLORD AND TENANT—FORFEITURE FOR FAILURE TO PAY RENT.— In a tenancy from year to year where the right to hold over is dependent upon performance of the conditions of rental for the previous year, a breach of the contract during one year, unless waived, would operate as a forfeiture of right to hold over for the succeeding year; but where the contracts for rental are independent of each other, a breach of contract for one year would not operate as a forfeiture of all rights under the other contract.

3. LANDLORD AND TENANT—RENEWAL OF LEASE.—In unlawful detainer by a landlord to obtain possession of a farm, where plaintiff testified that he authorized his brother to represent him in leasing the land, it was error to refuse to permit defendant to testify that he had leased the premises from plaintiff's brother.

Appeal from Woodruff Circuit Court, Southern District; *J. M. Jackson,* Judge; reversed.

*C. F. Greenlee,* for appellant.

1. Appellant leased the land for 1919 on the same terms that he had occupied the premises for six years, and under the evidence appellant had the right to the farm for the year 1919.

2. Appellant did not forfeit his right to remain on the farm by reason of failing to pay rent, as he paid it as agreed, and owed appellee nothing.

3. The court erred in giving instruction No. 1 for appellee, which was stressed by giving No. 2; also in refusing the first instruction asked by defendant. The verdict is contrary to the proof and the law.

*Roy D. Campbell,* for appellee.

1. The questions raised are purely of fact and were submitted to the jury on instructions which correctly state the law. Appellant having failed to pay the rent for 1918, after proper demand, was properly dispossessed.

2. The oral instruction given by the court on its own motion was not embraced in the motion for new

trial, and any objection thereto is waived. 97 Ark. 541; 57 *Id.* 203.

3. Instruction No. 1 for plaintiff correctly stated the law. Cases *supra;* 65 Ark. 531. The facts were passed on by the jury, under proper instructions, and the verdict is fully sustained by the evidence.

McCulloch, C. J. This is an action of unlawful detainer instituted against appellant by appellee, Harry Rosser, to recover possession of certain farm land owned by appellee and occupied by appellant as appellee's tenant. Appellee prevailed in the trial below and judgment was entered in his favor on the verdict of the jury for recovery of possession of the premises in controversy, and an appeal has been prosecuted to this court.

Many of the material facts are undisputed, but there was a sharp conflict in the testimony as to some of the facts, and the verdict of the jury is conclusive of the issues, if the same were properly submitted to the jury in the court's charge.

Appellee owned a farm in Woodruff County and rented a portion of it to appellant from year to year, for five or six years prior to the year 1918, the rent being fixed at a share of the crop cultivated and gathered, one-third of the corn and one-fourth of the cotton. There was an oral contract to that effect between the parties for the year 1918, and the custom had been for appellant, after gathering the cotton, to sell it and pay over one-fourth of the proceeds to appellee, or deposit it in the bank to the latter's credit.

During the month of July, 1918, appellee was drafted into the United States army, and after spending a time in training camps was sent overseas. Just before he left home to go into the army he discussed with appellant their business transactions, and appellee instructed appellant to gather the crop as usual and to pay over his part of the proceeds to his brother, Ollie, who was to be his agent in connection with the operation of the farm. At this point of the narrative arises a sharp conflict between the testimony of the two parties as to what oc-

curred between them with reference to appellant's further occupancy of the farm. Appellant testified that he made an oral agreement with appellee that he should have the place for the year 1919, on the same terms as theretofore, except that he was to cultivate certain additional acreage then occupied by another tenant, and that he should make certain improvements to the houses on the premises. He testified that he made the improvements in accordance with the agreement. Appellee was present at the trial and testified differently concerning the conversation with appellant in relation to his occupancy of the premises for the succeeding year. He testified that appellant spoke to him at that time about remaining on the place another year, but that he told him that he would leave his brother Ollie in charge, and that as long as appellant and Ollie could get along all right he was willing for appellant to remain there, provided he made satisfactory arrangements with Ollie. He denied that he made any contract with appellant about remaining on the place for another year, but merely stated to him that the matter was open to a new arrangement with his brother Ollie.

Appellant made and gathered nine bales of cotton that year, and before any controversy arose he gathered and sold five bales of the cotton. When the first bale was gathered it was sold and one-fourth of the proceeds was paid over to appellee's brother according to directions, but the other four bales were gathered and sold after the death of appellee's brother, and appellant deposited appellee's part of the proceeds in the bank to the latter's credit. Later, the remaining four bales of cotton were gathered and stored at appellant's house on the farm. After the death of Ollie Rosser, appellee authorized his sister, Mrs. Echols, to attend to his farming matters for him, appellee being still in France. A controversy arose between appellant and Mrs. Echols as to the immediate sale of the cotton, for the purpose of distributing the shares therein according to the terms of the contract, and on December 20, 1918, Mrs. Echols, as agent for her

brother, gave written notice to appellant to quit the premises on or before January 10, 1919. Appellant refused to quit possession of the premises, and this action was begun on January 11, 1919, the day after the maturity of the notice to quit.

The court, over appellant's objections, gave several instructions, which told the jury, in substance, that if appellant failed and refused, upon demand, to pay the rent due on the lands for the year 1918, the verdict should be in favor of appellee for the recovery of possession of the land without regard to the question of a new contract covering the rental of the place for the year 1919. Instruction No. 2 given by the court reads as follows:

"You are instructed that rent for leased premises which runs from January 1 to December 31, where a part of the crop is taken as rent is due as the crop is gathered; if you find from the evidence in this case that Florence Echols as the agent of the plaintiff made demand upon the defendant for the portion of four bales of cotton due for rent, during this period and the defendant declined or refused to so deliver said cotton, then you are instructed that the defendant forfeited all right to remain on said premises, even though you find he had a verbal contract to continue on said premises for the year 1919, and your verdict will be for the plaintiff."

Appellant requested the court to give an instruction stating to the jury that if there was a rental contract between the parties covering the year 1919, appellant had a right to hold possession, but the court modified the instruction by inserting a proviso to the effect that the rent must have been paid for the year 1918, as explained in the other instructions. Our conclusion is that the court did not correctly state the law on the subject, and that the judgment must, for that reason, be reversed.

Prior to the enactment of a statute on the subject by the General Assembly for the year 1875, the law in this State was that failure to pay rent did not constitute a forfeiture, unless so provided in the contract; but the law was changed by a statute, which has been subsequently

amended, so as to make the law stand as now incorporated in Kirby's Digest, section 3630, which provides that "a tenant who shall fail or refuse to pay the rent therefor when due, and after three days' notice to quit and demand made in writing for the possession thereof by the person entitled thereto, his agent or attorney, shall refuse to quit such possession, shall be deemed guilty of an unlawful detainer." The effect of this statute has been explained in former decisions of this court. *Parker* v. *Geary,* 57 Ark. 301; *Sells* v. *Brewer,* 125 Ark. 108.

The grounds of forfeiture provided by the statute apply only to the particular contract under which the defaulted rent payment accrued and not to an independent contract covering the rent for another period. In other words, the forfeiture of the contract by the nonpayment of rent does not extend to an independent contract so as to afford grounds for a forfeiture of that contract. In a tenancy, from term to term, where the right to hold for a succeeding term is dependent upon the performance of the conditions of the rental for the preceding period, a breach of contract during one period would operate, unless waived, as a forfeiture of the right to hold over for the succeeding period (*Judd* v. *Fairs,* 53 Mich. 518), but not so in the case of an independent contract for a new period. Where the contracts for rental are independent of each other, the grounds for forfeiture of one of the contracts would not, as before stated, operate as a forfeiture of all rights under the other contract.

Under this view of the law the error in the court's charge is manifest. The notice to quit was given on December 20, 1918, and demanded surrender of the premises on January 10, 1919, which was after the commencement of the new term, if there had in fact been a new contract between the parties for the year 1919, as the testimony introduced by appellant tended to establish. Regardless of failure to pay rent for the year 1918 under the contract covering that period, appellant was allowed to remain over into the new term and was entitled to hold possession, inasmuch as under the law as

above announced his failure to pay rent under the contract of 1918 did not work a forfeiture for the new contract for the succeeding year. There was a conflict in the testimony with respect to the failure or refusal to pay rent, but we need not discuss that subject, for the reason that in any event appellant was entitled to have the case go to the jury on the issue of a new contract for the year 1919.

In view of a new trial of the case, we deem it proper to discuss another assignment of error, which we think is well founded, and that is the exclusion by the court of appellant's testimony with reference to the alleged conversation with Ollie Rosser. He testified, or offered to testify, that he spoke to Ollie Rosser in the autumn of 1918 about his remaining on the place for next year, and that Ollie agreed with him that he might remain there for another year under the same terms as theretofore. We think this testimony was competent and should have been admitted. Appellant previously testified that he made a contract with appellee himself for the renting of the premises during the year 1919, but appellee denied this, and there was a conflict for the jury to settle. Appellant further testified that the agreement to cover the renting for 1919 was renewed with Ollie Rosser in the conversation that the court excluded from the consideration of the jury. According to the undisputed testimony, appellee left his brother Ollie in charge of the premises and told appellant that any arrangement the latter made with Ollie would be satisfactory. This being true, Ollie was authorized to make a contract for the year 1919 as agent of appellee, and appellant had the right to prove by his own testimony that such a contract was in fact entered into. The jury might have found against appellant on the question of a contract made directly between the parties in July, 1918, and yet appellant had the right to have the jury pass on the question whether or not he made a contract with appellee's brother and agent after appellee went to France. It was error, therefore, to exclude this testimony.

For the errors indicated the judgment is reversed and the cause remanded for a new trial.

1. APPEAL AND ERROR—VERDICT ON CONFLICTING EVIDENCE.—A verdict on conflicting evidence is conclusive on appeal.